UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHACE GJOKAJ and VATA GJOKAJ

       Plaintiffs,

v.                                                              Case No. 2:14-cv-11119
                                                  Honorable Patrick J. Duggan

HSBC MORTGAGE SERVICES, INC.,
and MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.

       Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs Shace Gjokaj and Vata Gjokaj initiated this action against

Defendants HSBC Mortgage Services, Inc. ("HSBC") and Mortgage Electronic

Registration Systems, Inc. ("MERS") in state court to redress alleged improprieties

in the foreclosure of their home.  Defendants timely removed the action to this

Court and eventually filed a motion to dismiss Plaintiffs' Amended Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6).  This motion, which in

addition to dismissal seeks the imposition of sanctions against Plaintiffs' counsel,

is presently before the Court. Having determined that oral argument would not

significantly aid the decision process, the Court dispensed with oral argument

pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).  For the reasons

stated herein, the Court declines to impose sanctions but otherwise grants

Defendants' Motion and dismisses the action with prejudice.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Note, Mortgage, and Eventual Foreclosure

On May 2, 2006, Plaintiffs accepted a $255,000 loan from M&I Bank FSB,

and, in exchange, executed a promissory note secured by a mortgage on real

property commonly known as 3934 Lancaster Drive, Sterling Heights, Michigan

(hereinafter, the "Property").  (Mortgage, Def.'s Mot. Ex. 1.)  The Mortgage,

executed in favor of MERS, "solely as [] nominee for Lender and Lender's

succssors and assigns[,]" designates MERS as "the mortgagee under this Security

Instrument."  (*Id.*)  The Mortgage was recorded with the Macomb County Register

of Deeds on June 12, 2006, at Liber 17917, page 202.  (*Id.*)

MERS subsequently assigned the Mortgage to HSBC on December 18,

2012. An assignment reflecting this transfer was recorded with the Macomb

County Register of Deeds on January 15, 2013, at Liber 21842, page 669.

(Assignment, Defs.' Mot. Ex. 2.)

Plaintiffs eventually defaulted on their loan obligations by failing to remit

timely payments.  Plaintiffs' pleading does not go so far as to admit the default

outright; however, Plaintiffs make several allegations regarding a request for a loan

modification, which implicitly suggests that Plaintiffs were unable to keep up with

their payment obligations pursuant to the original loan agreement.  (*See, e.g.*, Am.
Compl. ¶ 13 ("Plaintiff [sic] timely submitted a request for a loan modification
package[.]").)  Further, Plaintiffs do not refute Defendants' statement that
"Plaintiffs defaulted on their payment obligation and have not made a payment
since March 2010."  (Defs.' Br. 2.)

 As a result of Plaintiffs' default, HSBC initiated a foreclosure by
advertisement under Michigan's statutory scheme.[1]  (Am. Compl. ¶ 12.)  The first
of four notices of foreclosure appeared in the Macomb County Legal News on
February 8, 2013.  (Aff. of Publication attach. Sheriff's Deed, Def.'s Mot. Ex. 3.)
On July 12, 2013, the Property was sold at a sheriff's sale; HSBC purchased the
Property for $127,500.  (*Id.*)  The deed issued at the sheriff's sale was recorded
with the Macomb County Register of Deeds on July 19, 2013, at Liber 22278, page
527.  (*Id.*)  The statutory redemption period expired on January 12, 2014, without
Plaintiffs having redeemed.  (Defs.' Br. 3.)

## B. Court Proceedings

 On January 13, 2014, a day after the close of the statutory redemption
period, Plaintiffs filed a complaint in the Circuit Court for Macomb County in

---

[1] Plaintiffs' Amended Complaint contends that Defendants caused the
institution of foreclosure proceedings.  However, MERS assigned any interest it
held in the Mortgage on December 18, 2012, prior to the initiation of foreclosure
by advertisement proceedings.

Macomb County, Michigan.[2]  (Compl. attach. Notice of Removal as Ex. 1.)

Defendants received a copy of this complaint on February 14, 2014, and, on March

14, 2014, Defendants removed the action to this Court pursuant to 28 U.S.C. §§

1332, 1441(a), and 1446.  On March 21, 2014, Defendants sought dismissal of

Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  In lieu

of responding to Defendants' Motion, Plaintiffs' filed an amended complaint as of

right within the twenty-one day period set forth in Rule 15(a)(1)(B).

Plaintiffs' Amended Complaint contains eight counts against both named

defendants: Count I – Fraudulent Misrepresentation; Count II – Breach of

Contract; Count III – Violations of the Real Estate Settlement Procedures Act

("RESPA"), 12 U.S.C. § 2601 *et seq.* and of the Truth in Lending Act ("TILA"),

15 U.S.C. § 1061 *et seq.*;[3] Count IV – Violation of 15 U.S.C. § 1639; Count V –

Quiet Title; Count VI – Violation of Michigan Compiled Laws § 600.3204 *et seq*.;

Count VII – Slander of Title; and Count VIII – Injunctive Relief.  While far from a

model of clarity, it appears that Plaintiffs' allegations of wrongdoing relate to

"Defendants['] fail[ure] to provide proper disclosures" related to the terms of the

---

[2] Plaintiff's original complaint set forth two counts: Count I – Quiet Title
and Count II – Violation of Michigan Compiled Laws § 600.3205a.

[3] The Court cautions Plaintiffs' counsel against combining two distinct
claims in a single count.

4

loan at origination as well as to Defendants' purported failure to comply with Michigan's loan modification statutes.  (Am. Compl. ¶¶ 11, 13-14.)

After obtaining an extension of time to which to respond to Plaintiffs' Amended Complaint, Defendants once again filed a Rule 12(b)(6) motion seeking dismissal of the entire action.  In addition to dismissal, Defendants seek attorney's fees pursuant to 28 U.S.C. § 1927 due to the alleged frivolity of the claims asserted by Plaintiffs' counsel. (Defs.' Br. 17.)  This motion has been fully briefed.

## II.    GOVERNING LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows the Court to assess whether a plaintiff's pleadings state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  As articulated by the Supreme Court of the United States, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1974 (2007)).  This facial plausibility standard requires claimants to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims.  *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1965. Even though a complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative

level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965) (internal citations omitted).

While courts are required to accept the factual allegations in a complaint as true, *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965, the presumption of truth does not apply to a claimant's legal conclusions, *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted).

In addition to evaluating the sufficiency of the factual allegations in the complaint itself, courts may consider any exhibits attached to the complaint, matters of public record, and exhibits attached to a defendant's 12(b)(6) motion, provided that the latter are referred to in the complaint and are central to the claims therein. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

In the present case, the Court has considered documents, all of which are public, relating to the mortgage and foreclosure.

### III.   ANALYSIS

6

**A.     General Principles Pertaining to Michigan's Foreclosure by Advertisement Statute**

Foreclosures by advertisement, such as the foreclosure at issue in this case, as well as the rights of both the mortgagor and mortgagee after a foreclosure sale has occurred, are governed by Michigan statutory law. *See, e.g.*, *Senters v. Ottawa Sav. Bank, F.S.B.*, 443 Mich. 45, 50, 503 N.W.2d 639, 641 (Mich. 1993); *Conlin v. Mortgage Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013) (applying Michigan law) (citation omitted).

Pursuant to Michigan law, a mortgagor has six months from the date of the sheriff's sale to redeem foreclosed property. Mich. Comp. Laws § 600.3240(8). Significant consequences flow from a mortgagor's failure to redeem prior to the expiration of the statutory redemption period: the mortgagor's "right, title, and interest in and to the property" are extinguished, *Piotrowski v. State Land Office Board*, 302 Mich. 179, 4 N.W.2d 514, 517 (Mich. 1942), and the deed issued at the sheriff's sale "become[s] operative, and [] vest[s] in the grantee named therein . . . all the right, title, and interest [] the mortgagor had[,]" Michigan Compiled Laws § 600.3236. This rule of law – holding that absolute title vests in the purchaser at the foreclosure sale upon expiration of the redemption period – has been applied consistently by state and federal courts alike to bar former owners from making any claims with respect to a foreclosed property after the statutory redemption period has lapsed.

There is one caveat to the general rule described above: after the redemption period has run, a court may allow "an equitable extension of the period to redeem" if a plaintiff-mortgagor makes "a clear showing of fraud, or irregularity[.]" *Schulthies v. Barron*, 16 Mich. App. 246, 247-48, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969); *Freeman v. Wozniak*, 241 Mich. App. 633, 637, 617 N.W.2d 46, 49 (Mich. Ct. App. 2000) ("[I]n the absence of fraud, accident or mistake, the possibility of injustice is not enough to tamper with the strict statutory requirements.") (citing *Senters*, 443 Mich. at 55, 503 N.W.2d at 643).  In order to satisfy this standard, a plaintiff-mortgagor's pleading must allege misconduct related to the foreclosure procedure itself.  *Conlin*, 714 F.3d at 360; *Reid v. Rylander*, 270 Mich. 263, 267, 258 N.W. 630, 631 (Mich. 1935) (holding that only the foreclosure procedure may be challenged after a sale); *Freeman*, 241 Mich. App. at 636-38, 617 N.W.2d at 49 (reversal of sheriff's sale improper without fraud, accident, or mistake in foreclosure procedure).

If fraud or irregularity is shown in connection to the foreclosure procedure, the result is "a foreclosure that is voidable, not void *ab initio*."  *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115, 825 N.W.2d 329, 337 (Mich. 2012).  In order "to set aside the foreclosure sale, plaintiffs must show that they were prejudiced by defendant's failure to comply" with Michigan's foreclosure by advertisement statute.  *Id.*; *Conlin*, 714 F.3d at 361.  "To demonstrate such

8

prejudice, [plaintiffs] must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Kim*, 493 Mich. at 115-16, 825 N.W.2d at 337 (footnote omitted).

**B.      Setting Aside the Foreclosure Sale**

Because the redemption period in the present case has expired, the Court must analyze Plaintiffs' claims within the fraud or irregularity framework outlined above.  Thus, the Court must decide whether, under Michigan law, the foreclosure sale can be set aside, or is voidable, on the facts alleged.  *See Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (observing that the *Erie* doctrine requires federal courts hearing state law claims to apply the decisions of the state's highest court).

Upon review, not a single count in Plaintiffs' eight-count Amended Complaint even arguably constitutes fraud or irregularity in connection with the foreclosure procedure.  Counts I though IV indisputably do not relate to the foreclosure procedure; rather the allegations contained in these counts pertain to the origination of the loan.  Count I, entitled fraudulent misrepresentation, alleges fraud in the origination of the loan.  In Count II, Plaintiffs indicate that "Defendants breached the Loan Agreement by failing to disclose material facts, by making false and misleading statements and by engaging in deficient mortgage servicing and foreclosure processes."  (Am. Compl. ¶ 28.)  Count III alleges that

Defendants failed to provide "required notices and disclosures under the" RESPA "and/or the" TILA.  (*Id.* ¶ 31.)  In Count IV, Plaintiffs claim that Defendants extended credit to Plaintiffs without verifying their ability to repay the debt."  (*Id.* ¶¶ 36-37.)

Unfortunately for Plaintiffs, Counts V through VIII fare no better.  Count V seeks to quiet title in Plaintiffs and Count VIII seeks injunctive relief.  Both of these counts ask for certain types of relief and are not independent causes of action. Count VII seeks to state a claim for the tort of slander of title, which is distinct from a fraud or irregularity involving the foreclosure procedure.  This leaves Count VI, which is premised upon Defendants' alleged failure to comply with Michigan's loan modification statute, as the only possible avenue for Plaintiffs to demonstrate either fraud or irregularity. However, any alleged lack of compliance with the loan modification statutes does not constitute a showing of fraud or irregularity in the foreclosure procedure.  *See, e.g.*, *Williams v. Pledged Property II, L.L.C.*, 508 F. App'x 465, 468 (6th Cir. 2012) ("Despite the fact that [loan] negotiations may have taken place during the foreclosure process, these negotiations remained separate from the foreclosure process itself.").

Although Plaintiffs have failed to set forth allegations that accepted as true entitle them to the relief they seek, the Court addresses each count in Plaintiffs' Amended Complaint before turning to Defendants' request for attorney's fees.

C.     **Plaintiffs' Individual Counts**

1.     *Count I – Fraudulent Misrepresentation*

In Count I, Plaintiffs seek to state a claim for fraudulent misrepresentation based on allegations that they were misled regarding the terms of their loan at the time they entered the transaction.  According to Plaintiffs, Defendants' failure "to give notices and disclosures that were required by law" prevented Plaintiffs from being "advised of the true details of the Loan transaction."  (Am. Compl. ¶ 21(a).)

To prevail on a fraud claim in Michigan, a plaintiff is first required to prove that the defendant made a material representation.  *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976) (internal quotations omitted) (setting forth the six elements of common law fraud).  Although required to adhere to federal pleading standards to survive a motion to dismiss, specifically Federal Rule of Civil Procedure 9(b),[4] Plaintiffs do not allege who specifically made the statements; rather, they contend that Defendants made "representations" to Plaintiffs that they qualified for the loan and "all terms, conditions, and circumstances contained in the underwriting materials and closing package (including the Mortgage and the Note)" were "adequately and fully disclosed as required by law."  (Am. Compl. ¶ 20.)  Because a cursory review of

---

[4] Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

11

the Mortgage reveals that neither HSBC nor MERS was involved with the

origination of Plaintiffs' loan,[5] the Court infers that the alleged misrepresentations

or omissions must have been the result of the conduct of an agent of the originating

lender, M&I Bank, which is not a party to this action. (Mortgage, Def.'s Mot. Ex.

1.)  Even if Plaintiffs had adequately pled fraud, which they have not, to the extent

the original lender committed misconduct during the loan origination, such conduct

cannot be imputed to Defendants as successors or assignees.  *Stacey v. Vista*

*Mortgage Corp.*, No. 10-13769, 2011 U.S. Dist. LEXIS 146726, at *8 (E.D. Mich.

Dec. 21, 2011) (Steeh, J.) (citing *Swarich v. OneWest Bank, FSB*, No. 09-13346,

2009 U.S. Dist. LEXIS 108644 , at *19 (E.D. Mich. Nov. 20, 2009) (Edmunds, J.)

(granting defendant's motion to dismiss because the alleged misrepresentations

were made by an employee of the original lender, and not by any employee of

defendant company, the current holder of the mortgage)).  Thus, even assuming the

verity of Plaintiffs' allegations, any misconduct at the origination stage could not

logically have been the product of either named defendants' agents.  It necessarily

follows that Count I fails to state a claim upon which relief can be granted.[6]

---

[5] Plaintiffs obtained their loan from non-party M&I Bank.  MERS merely
served as nominee holding the mortgage, which it assigned to HSBC in December
2012, over six years after Plaintiffs accepted their loan.

[6] The Court also notes that Michigan's statute of limitations for claims
sounding in fraud is six years.  Mich. Comp. Laws § 600.5813.  Plaintiffs' claims

*Coyers v. HSBC Mortgage Servs.*, 701 F.3d 1104, 1108 (6th Cir. 2012) (affirming dismissal of borrowers' fraud claims against defendant loan servicer where plaintiffs asserted claims based on misrepresentations at the time of origination and loan servicer "had no involvement with the inception" of the loan at issue).

### 2.    *Count II – Breach of Contract*

In Count II, Plaintiffs seek to state a claim for breach of contract. Defendants argue this claim is subject to dismissal for several reasons but the Court only addresses the contention that Plaintiffs have failed to state a claim upon which relief can be granted, as this argument is dispositive.

To establish a breach of contract in Michigan, Plaintiffs must allege: (1) the existence of a valid contract, (2) establish the contract's terms, (3) evidence of a breach to those terms, and (4) show an injury causally related to that breach. *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 819 (6th Cir. 1999).

Although Plaintiffs did not supply this Court with a copy of the Mortgage or otherwise endeavor to establish the contractual terms, Defendants furnished a copy of the Mortgage.   Accordingly, the first two elements are arguably satisfied. Plaintiffs allege breach of original mortgage agreement but neither Defendant was a party to that mortgage.  Further, the sole allegation in Count II relating to any purported breach is Plaintiffs' generalized assertion that "Defendants breached the

---

necessarily accrued on or before May 2, 2006, when the loan documents were executed.  The instant action was filed in January 2014, well over six years later.

Loan Agreement by failing to disclose material facts, by making false and misleading statements and by engaging in deficient mortgage servicing and foreclosure processes."  (Am. Compl. ¶ 28.)  This allegation, entirely lacking in factual support or enhancement, is wholly insufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted).

Accordingly, the Court dismisses Count II with prejudice.

**3.      *Count III – Violations of the RESPA and the TILA***

In Count III, Plaintiffs allege that "[w]hen Defendants entered Loan negotiations, no attempt was made by Defendants to give required notices and disclosures under the [RESPA] and/or the [TILA]."  (Am. Compl. ¶ 31.)  Further, "Defendants imposed charges, fees and costs as stated above in violation of law."[7] (*Id.* ¶ 32.)  "[B]y reason of its unethical and illegal activity," "Defendant . . . added to and inflated the principal balance owed on the Home, thereby depriving Plaintiff of his property rights."[8]  (*Id.* ¶ 33.)  The Amended Complaint contains no further

---

[7] Despite a thorough review of the allegations in Plaintiffs' Amended Complaint, the Court has not been able to locate any other reference to the "charges, fees and costs" referred to in this paragraph.  (Am. Compl. ¶ 32.)

[8] The allegations in this paragraph, which rather explicitly denote the existence of a singular defendant and singular plaintiff, concern this Court. Adding weight to this concern is the fact that Plaintiffs' Amended Complaint repeatedly

14

elaboration on Defendants' allegedly unlawful conduct and, frankly, it is entirely unclear from these threadbare allegations which specific provisions of the RESPA or the TILA Defendants allegedly violated.

Once again, the Court finds it necessary to note that neither HSBC nor MERS "entered Loan negotiations" with Plaintiffs, as M&I Bank was the lender. Further, even if they had, both the RESPA and the TILA contain statutes of limitations that expired no less than five years ago, a fact which Plaintiffs concede in responding to Defendants' Motion.  (Pls.' Resp. 15 n.1.)  Despite this concession, Plaintiffs contend that "[t]he statutes of limitation in this matter are subject to equitable tolling because the Loan intentionally violates state and federal laws[,]"  (Am. Compl. ¶ 15), and are subject to equitable tolling by virtue of "Plaintiffs [sic] inability to discover the fraud until much later[,]" (Pls.' Resp. 15 n.1).  The Court is left to guess which state and federal laws were intentionally violated and what fraudulent conduct Plaintiff claims forms the basis of the alleged fraudulent concealment.

---

references either a singular plaintiff or defendant.  (*See, e.g.*, Am. Compl. 1 ("NOW COME, Plaintiff by and through her attorneys . . . ."); *id.* ¶¶ 5, 7, 8, 11, 13-14, 19-21, 24-26, 29-30, 33-35, 40, 43, 45, 48, 52, 54-57, p. 7.)  Taken in tandem with the previous footnote, the Court finds it prudent to caution Plaintiffs' counsel that the filing of "cookie cutter" pleadings is potentially sanctionable conduct.  *See Landis v. Fannie Mae*, 922 F. Supp. 2d 646 (E.D. Mich. 2013) (sanctioning counsel for repeatedly filing virtually identical complaints in mortgage cases wholly lacking in merit).

To properly plead a basis for a court's application of equitable tolling for fraudulent concealment, plaintiffs must allege that (1) defendants concealed the conduct that constitute the cause of action, (2) defendants' concealment prevented plaintiffs from discovering the cause of action within the limitations period, and (3) until discovery, plaintiffs exercised due diligence in trying to find out about the cause of action. *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009) (citations omitted). Plaintiffs have provided no such allegations and their conclusory allegations regarding equitable tolling are insufficient to warrant that relief. *Thielen v. GMAC Mortg. Corp.*, 671 F. Supp. 2d 947, 954 (E.D. Mich. 2009) (dismissing claimed entitlement to equitable tolling of TILA's limitations period where plaintiffs failed to present any allegations in support of such relief).

Because a mere claim of entitlement to an equitable remedy falls far short of showing an entitlement to relief, the Court dismisses Count III with prejudice due to the expiration of both limitations periods.

### 4.    *Count IV – Violation of 15 U.S.C. § 1639(h)*

In Count IV, Plaintiffs contend that Defendants violated the Home Ownership and Equity Protection Act ("HOEPA"), which amended the TILA and is codified at 15 U.S.C. § 1639(h), by extending credit to Plaintiffs without regard to their ability to repay debt. (Am. Compl. ¶ 37.) As Defendants suggest, this claim is subject to dismissal because neither HSBC nor MERS extended credit to

16

Plaintiffs (rather, as this Court has stated repeatedly, M&I Bank extended the credit) and because the one-year statute of limitations set forth at 15 U.S.C. § 1640(e) has long since expired.  (Defs.' Br. 12-13.)

Because Count IV fails to state a claim upon which relief can be granted, the Court dismisses IV with prejudice.

**5.     *Count VI – Violation of Michigan Compiled Laws § 600.3204 et seq.***

In Count VI, Plaintiffs seek relief on the basis that Defendants violated Michigan's loan modification and foreclosure by advertisement statutes. Specifically, "Defendants initiated foreclosure of the Home without giving the required notices under MCL 600.3205a."  (Am. Compl. ¶ 46.)  Defendants also violated the foreclosure by advertisement statute by failing to send Plaintiffs any "loan modification calculations" as required by Michigan Compiled Laws § 600.3204(4) and by failing to approve a modification despite the fact that "Plaintiff[s] qualified and continue[] to qualify for modification[.]"  (*Id.* ¶¶ 48, 50.) Plaintiffs also allege that they "could not petition the court for judicial foreclosure because Defendants continued to promise modification[.]"[9]  (*Id.* ¶ 49.)

---

[9] Elsewhere in the Amended Complaint, Plaintiffs allege that "Defendant . . . initiated foreclosure proceedings without regard to the modification agreement entered into[.]"  (Am. Compl. ¶ 16.)  It is entirely unclear whether this alleged agreement was oral or reduced to a writing, but a copy of this alleged modification agreement has not been supplied to the Court.

Plaintiffs' claims fail for a number of reasons.  First, Plaintiffs' suggestion that the allegedly defective notice under Michigan Compiled Laws § 600.3205a constitutes an irregularity sufficient to set aside the sheriff's sale is mistaken.  *See, e.g.*, *Galati v. Wells Fargo Bank, N.A.*, No. 11-11487, 2011 U.S. Dist. LEXIS 126124, at *10-11 (E.D. Mich. Nov. 1, 2011) (Cohn, J.) (holding that failure to provide "notice of [the] right to request a modification meeting under Michigan Compiled Laws § 600.3205a(1)(b)" does not constitute a "sufficient irregularit[y] to void the foreclosure sale"); *Brezzell v. Bank of Am., N.A.*, No. 11-11476, 2011 U.S. Dist. LEXIS 74291, at *15 (E.D. Mich. July 11, 2011) (Edmunds, J.) ("Even if Defendants violated [Michigan Compiled Laws § 600.3205a], that is not enough to set aside the foreclosure sale.").

Second, to the extent Plaintiffs seek relief for Defendants' purported noncompliance with Michigan's loan modification procedures on the basis that such noncompliance constitutes a structural defect rendering the foreclosure void *ab initio*, the Court notes that such a theory was explicitly rejected by the Michigan Supreme Court in *Kim*.  493 Mich. at 115, 825 N.W.2d at 337.  Plaintiffs' reliance on *Mitan v. Federal Home Loan Mortgage Corp.*, 703 F.3d 949 (6th Cir. 2012), a case pre-dating *Kim*, for this position is entirely problematic as *Mitan* is no longer

18

good law.[10] *Mourad v. Homeward Residential, Inc.*, 517 F. App'x 360, 367 (6th Cir. 2013) (recognizing that the Michigan Supreme Court's decision in *Kim* abrogated *Mitan*'s holding).

Third, under Michigan's statute of frauds, any alleged promise by a financial institution to renew, extend, modify, or permit a delay in repayment or performance of loan must be reduced to a writing and signed by the financial institution to be enforceable. Mich. Comp. Laws § 566.132(2)(b). As the Michigan Court of Appeals has explained, this statute precludes a party "from bringing a claim--no matter its label--against a financial institution to enforce the terms of an oral promise[.]" *Crown Tech. Park v. D&N Bank, F.S.B.*, 242 Mich. App. 538, 550, 619 N.W.2d 66, 72 (Mich. Ct. App. 2000). Assuming Plaintiffs' Amended Complaint contains sufficient factual allegations to establish the

---

[10] "The Michigan Supreme Court's decision in *Kim* reviewed and abrogated *Davenport v. HSBC Bank USA*, 275 Mich. App. 344, 739 N.W.2d 383 (Mich. Ct. App. 2007)[,] which was the decision the Sixth Circuit relied upon in the contrary holding of *Mitan v. Fed. Home Loan Mortg. Corp.*, 703 F.3d 949 (6th Cir. 2012). *Mitan* held that failure to comply with the Michigan foreclosure by advertisement statute rendered the foreclosure void." *Burrell v. Citimortgage, Inc.*, No. 12-14081, 2014 U.S. Dist. LEXIS, at *10-11 n.2 (E.D. Mich. April 15, 2014) (Borman, J.).

The Court quotes the above language as Plaintiffs' counsel, who represented the plaintiffs in *Burrell*, relies on *Mitan* as "binding and controlling authority" which this Court must follow. (Pls.' Resp. 7.) Plaintiffs' counsel should consider himself on formal notice that any further reliance on *Mitan*, a decision which has been thoroughly discredited by the Sixth Circuit itself, may result in the imposition of sanctions. *See, e.g.*, *Mourad v. Homeward Residential, Inc.*, 517 F. App'x 360, 367 (6th Cir. 2013) (recognizing that *Kim* abrogated *Mitan*).

19

existence of an oral promise to modify the loan, (Am. Compl. ¶ 49), Plaintiffs have not alleged the existence of a writing signed by either Defendant confirming any loan modification.  As such, any claim arising from a purportedly wrongful refusal to modify Plaintiffs' loan must be dismissed as barred by Michigan's statute of frauds.  *Rydzewski v. Bank of N.Y. Mellon*, No. 12-12047, 2012 U.S. Dist. LEXIS 129955, at *13 (E.D. Mich. Sept. 12, 2012) (Cohn, J.)

Fourth, and lastly, the loan modification statute "does not permit the Court to set aside a completed foreclosure sale." *Benford v. CitiMortgage, Inc.*, No. 11-12200, 2011 U.S. Dist. LEXIS 130935, at *5 (E.D. Mich. Nov. 14, 2011) (Duggan, J.)  Rather, the statute provides for a specific remedy in cases where a foreclosure by advertisement is commenced in violation of the loan modification statute: "the borrower may file an action in the circuit court for the county where the mortgaged property is situated to convert the foreclosure proceeding to a judicial foreclosure." Mich. Comp. Laws § 600.3205c(8); *see also Block v. BAC Home Loans Serv., L.P.*, 520 F. App'x 339, 340-41 (6th Cir. 2013) ("Even if the Blocks' [loan modification] claim had merit, they could not receive what their complaint asks for: 'all legal title to' the foreclosed home. . . . Instead, the remedy for a breach of the loan-modification statute is to 'convert the foreclosure proceeding to a judicial foreclosure.'") (citations omitted); *Smith v. Bank of Am. Corp.*, 485 F. App'x 749,

756 (6th Cir. 2012).  Here, the foreclosure is complete and the redemption period has expired; there is, therefore, nothing to convert.

Accordingly, the Court dismisses Count VI with prejudice.

**6.      *Count VII – Slander of Title***

Count VII of Plaintiffs' Amended Complaint seeks to state a claim for slander of title.  (Am. Compl. ¶¶ 52-56.)  Plaintiffs contend that Defendants slandered their title because Defendants did not have a valid security interest in the home by reason of "illegal conduct," yet Defendants caused the sheriff's sale.  (*Id.*)

Slander of title claims have both a common law and statutory basis in Michigan.  *B&B Inv. Group v. Gitler*, 279 Mich. 1, 8, 581 N.W.2d 17, 20 (Mich. Ct. App. 1998); Mich. Comp. Laws § 565.109.  Irrespective of which basis a plaintiff seeks to invoke, that plaintiff must plead "falsity, malice and special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages."  *Id.*

Count VII fails to even contain a "[t]hreadbare recital of the elements of" a slander of title action, *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949, and therefore necessarily fails to state a claim upon which relief can be granted.  As such, the Court dismisses Plaintiffs' slander of title claim with prejudice.

21

7.    *Count V – "Quiet Title"*

Count V purports to state a claim for quiet title.  However, quiet title actions are remedies, not independent causes of action.  *Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 928-29 (6th Cir. 2013) (per curiam) (affirming district court's dismissal of plaintiff's quiet title count on this basis).  Michigan law does, however, provide a statutory mechanism for quieting title, which the Court addresses in the interest of completeness.

Michigan Compiled Laws § 600.2932(1) provides, in pertinent part: "Any person . . . who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action . . . against any other person who claims  . . . [an inconsistent interest]."  This statutory language requires a plaintiff seeking to quiet title to establish a substantive right in the property superior to others claiming an inconsistent interest.  *Beach v. Twp. of Lima*, 489 Mich. 99, 110, 802 N.W.2d 1, 8 (Mich. 2011).  Plaintiffs bear the initial burden of proof and must establish a prima facie case of title.  *Stinebaugh v. Bristol*, 132 Mich. App. 311, 316, 347 N.W.2d 219, 221 (Mich. Ct. App. 1984) (citation omitted).  "Establishing a prima facie case of title requires a description of the chain of title through which ownership is claimed."  *Sembly v. U.S. Bank, N.A.*, No. 11-12322, 2012 U.S. Dist. LEXIS 1440, at *9 (E.D. Mich. Jan. 6, 2012) (Rosen, C.J.).

22

Plaintiffs have not alleged facts establishing a prima facie case of title. Nowhere in their Amended Complaint do Plaintiffs mention anything even closely resembling the chain of title through which ownership is claimed. (Am. Compl. ¶¶ 40-44.) Rather, Plaintiffs make wholly conclusory allegations such as "Defendants do not have a valid security interest in the Home because Plaintiffs signed the mortgage and note by reason of Defendants' failure to disclose material facts and by making false and misleading representations." (*Id.* ¶ 42.)

Of greater import, "Plaintiff[s] do[] not contest that [they] failed to pay and defaulted on the loan. [They] provide[] no allegations to indicate that [they] ha[ve] a plausible claim of ownership superior to the Bank's." *Rydzewski*, No. 12-12047, 2012 U.S. Dist. LEXIS 129955, at *10. Ironically, Plaintiffs' Amended Complaint supports a finding that HSBC has superior title to the Property based on the sheriff's sale and expiration of the redemption period.[11] *Piotrowski*, 302 Mich. at 186, 4 N.W.2d at 516 (explaining that mortgagors lose "all their right, title, and interest in and to the property at the expiration of their right of redemption").

Because Plaintiffs have not demonstrated any interest in the Property, the Court dismisses Count V with prejudice.

---

[11] Plaintiffs make no effort to explain why an action to quiet title has been brought against MERS as MERS does not have title to, or claim an ownership interest in, the Property. Rather, as the purchaser of the Property at the sheriff's sale and the entity named in the sheriff's deed, HSBC is the only defendant at all relevant to a quiet title action.

8.      *Count VIII – Injunctive Relief*

Plaintiffs request injunctive relief in Count VIII.  Plaintiffs have alleged neither facts nor a legal basis supporting application of this remedy.  Because Plaintiffs have not shown an entitlement to any form of relief on the cognizable causes of action contained in their Amended Complaint, Count VIII is dismissed with prejudice.

**D.      Defendants' Request for Attorney's Fees**

Defendants request attorney's fees under 28 U.S.C. § 1927, which provides:

> "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

In assessing the propriety of sanctions, courts should consider whether "an attorney knows or reasonably should know that a claim pursued is frivolous[.]"  *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 396 (6th Cir. 2009) (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997)).  "Under this objective standard, '§ 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence.'"  *Id.* (quoting *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006)).

24

In Plaintiffs' Response, counsel explains that the law regarding residential foreclosures has been in a constant state of evolution and that his previously dismissed cases have applied different law. (Pls.' Resp. 16.) The Court credits this explanation but wishes to put Plaintiffs' counsel on notice that because he has previously filed numerous actions with similar claims that have resulted in dismissal, he should know at this juncture that the allegations he is including in his complaints and the claims he is asserting on behalf of his clients are insufficient to withstand a motion to dismiss. Further, the rather non-responsive Response Brief cites case law which at least one other judge in this district has explained is no longer good law. *Burrell v. Citimortgage, Inc.*, No. 12-14081, 2014 U.S. Dist. LEXIS, at *10-11 n.2 (E.D. Mich. April 15, 2014) (Borman, J.) (explaining that *Mitan* is bad law). Plaintiffs' counsel and his firm are now on notice that should such frivolous claims appear before the undersigned again, attorney's fees and sanctions will likely result.

Plaintiffs' counsel has other residential foreclosure complaints pending before other judges in this district. The Court is not expressing any opinion on the merits of these complaints but is merely cautioning counsel that the repeated filing of cookie cutter complaints may constitute professional misconduct. *Landis v. Fannie Mae*, 922 F. Supp. 2d 646 (E.D. Mich. 2013). Prudence suggests that Plaintiffs' counsel should reevaluate any other actions currently pending before

any member of this bench to determine whether each claim asserted in those actions has an arguable basis in fact and in the law as it stands at this time.

Accordingly, Defendants' request for sanctions is denied.

### V.    CONCLUSION AND ORDER

For the reasons set forth above, the Court concludes that all eight counts contained in Plaintiffs' Amended Complaint fail to state a claim upon which relief can be granted.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss is **GRANTED** and Plaintiffs' Amended Complaint is **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Defendants' request for sanctions pursuant to 28 U.S.C. § 1927 is **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiffs' counsel, Mr. David Chasnick, is directed to re-evaluate any other actions that he currently has pending before any member of this bench, to determine whether each claim asserted in those actions has an arguable basis in fact and law.

Date:  July 1, 2014

                              s/PATRICK J. DUGGAN
                              UNITED STATES DISTRICT JUDGE

Copies to:
**David A. Chasnick, Esq.**
**Jennifer L. Newby, Esq.**

26